## Myers v. Sprenkle, Appellant.

*Partnership—Judgment note—Practice, C. P.—Evidence.*

Where a judgment note has been signed with the firm name which does not disclose the individual names of the partners, the plaintiff may file a formal declaration against the partnership by its title, naming the individual members, and judgment may be thus confessed and entered by the prothonotary in this form.

If one partner sign and seal a judgment note in the firm name, with the assent of the other, the latter is as much bound as if he had sealed it himself, and his assent can be proved by " any of the usual modes of evidence."   His admission or acknowledgment, subsequently, is strong evidence.

Argued March 12, 1902.   Appeal, No. 14, March T., 1902, by defendants, from judgment of C. P. York Co., on verdict for plaintiff in case of H. W. Meyers v. Martin B. Sprenkle. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.   Affirmed.

Issue to determine the validity of a judgment.   Before BITTENGER, P. J.

From the record it appeared that M. B. Sprenkle, Alexander Diehl, Noah B. Sprenkle and H. W. Myers constituted a partnership engaged in manufacturing candy.   The note upon which judgment was entered was given to Myers for payment of the latter's interest in the partnership.   The circumstances under which the note was given are stated at length in the opinion of the Superior Court.

Plaintiff's points were as follows:

1. The uncontradicted evidence in this case is that prior to April, 1896, M. B. Sprenkle, N. B. Sprenkle and Alex-

ander Diehl constituted a copartnership trading as the Acme Candy Company, and that a new partnership was then formed by the addition as a member of H. W. Myers. If the jury believe from the evidence that Martin B. Sprenkle agreed to the purchase by himself and one or more of his former partners of the interest of H. W. Myers in the firm, and if they believe from the evidence that in pursuance of such agreement Alexander Diehl executed the note in controversy, either with the previous knowledge and assent of Martin B. Sprenkle, or if they believe that he subsequently assented to it, their verdict must be for the plaintiff and against Martin B. Sprenkle for the amount due upon the note. *Answer:* This point is affirmed. [1]

2. If the jury believe that in accordance with an agreement between H. W. Myers and Martin B. Sprenkle, H. W. Myers sold his interest in the firm of the Acme Candy Company, said sale immediately dissolved said firm so far as H. W. Myers was concerned, without regard to the provisions of the agreement of partnership in regard to dissolution, and H. W. Myers had no longer any rights in the firm's property or obligations as a partner toward his former copartners, but was entitled to rely and could only rely upon whatever the contract of the sale of his partnership interest was. *Answer:* This point is affirmed. [2]

3. The question for the jury to determine is whether or not the note in suit was executed by Alexander Diehl as the obligation of a partnership of which Martin B. Sprenkle was a member, either with the knowledge and consent of Martin B. Sprenkle before it was executed, or with his subsequent assent thereto. If the jury find from the evidence that Martin B. Sprenkle either authorized the giving by Alexander Diehl of this note, or subsequently assented to its execution and delivery to Myers, he is bound, and the verdict of the jury should be for the plaintiff for the amount due upon the note. *Answer:* This point is affirmed. [3]

Verdict and judgment for plaintiff for $1,352.86. Defendant appealed.

*Errors assigned* among others were (1–3) above instructions, quoting them.

*John A. Hoober* and *Nevin M. Wanner*, for appellant.—The sealed note in suit, though signed with the firm name of the Acme Candy Company was actually executed and delivered by one member of the firm, Alex. Diehl, to another member, H. W. Myers, in the absence of, and without the knowledge of either of the other two partners. There is no pretense that the partner giving the note had any written authority to do so from any one, or for any purpose whatever. The note was therefore void as against both the firm, and the nonassenting members, though it would be good as against the partner executing and delivering it: Schmertz v. Shreeve, 62 Pa. 459; York Bank's Appeal, 36 Pa. 458; Potter v. McCoy, 26 Pa. 458; Whitaker v. Richards, 134 Pa. 191; McKenna v. McSherry, 1 Lack. Legal News, 230; McCleery v. Thompson, 130 Pa. 443.

The rule is well settled, that a full knowledge of all the material facts and circumstances attending the transaction is necessary to give validity to the ratification, and the party ratifying must know that he would not be bound without the ratification: Pittsburg, etc., R. R. Co. v. Gazzam, 32 Pa. 340–348; Zoebisch v. Rauch, 133 Pa. 532; Moore v. Patterson, 28 Pa. 505; Twelfth Street Market Co. v. Jackson, 102 Pa. 269.

· It has been held in the following cases that the ratification of a sealed instrument must be by an instrument under seal to render the party liable: Bellas v. Hays, 5 S. & R., 427–438; Grove v. Hodges, 55 Pa. 504; Jennings v. McComb, 112 Pa. 518.

*E. W. Spangler*, with him *Niles & Neff*, for appellee.—The case of Miller v. Royal Flint Glass Works, 172 Pa. 70, under the regulation of which this judgment note was entered of record, governs this case.

OPINION BY RICE, P. J., July 10, 1902:

Where a judgment note has been signed with the firm name which does not disclose the individual names of the partners, the plaintiff may file a formal declaration against the partnership by its title, naming the individual members, and judgment may be thus confessed and entered by the prothonotary in this

form: Miller v. Royal Flint Glass Works, 172 Pa. 70. This was the course pursued in the present case. Its regularity is not called in question by any of the assignments of error. The case cited is authority also for another proposition, which is, that if one partner sign and seal a judgment note in the firm name, with the assent of the other, the latter is as much bound as if he had sealed it himself, and his assent can be proved by "any of the usual modes of evidence." His admission or acknowledgment, subsequently, is strong evidence: Ficthorne v. Boyer, 5 W. 159. It appears that H. W. Myers, the plaintiff, and M. B. Sprenkle, the appellant, together with N. B. Sprenkle and Alexander Diehl, were partners doing business as the Acme Candy Company. The note in question was signed by Diehl thus:

{ "Acme Candy Co. [L. S.]

Alex. Diehl, Treas. [L. S.]"

The plaintiff testified that a short time before the execution and delivery of the note, the appellant said to him, "If you people give me a note for my interest in the firm, and let me out, you and Mr. Diehl can take the stock, and carry on the business if you choose to;" that the plaintiff replied, "Why not you people give me a note for my interest in the firm, and let me out of the firm, so that I can look around for something else to do;" that the appellant then said, "I am agreed to do that providing Mr. Diehl is agreed to it;" that when Diehl came in and was informed of what had taken place, he said to Sprenkle, "I don't see fit to give you a note, to let you out of the firm, but I am agreed to give Mr. Myers a note for his interest in the firm, providing Mr. Sprenkle is agreed to that;" that the latter replied, "Yes, I am agreed that you shall give Mr. Myers a note for his interest;" that as they were separating the plaintiff said to Sprenkle, "Then you are agreed now, and understand that Mr. Diehl shall give me a note for my interest in the firm," to which Sprenkle replied, "Yes, I am;" that a few days later Diehl gave him the note in question, and about the same time dissolution notices were sent out to customers and creditors; and that subsequently he received payments, by the hands of Diehl, amounting to $667.39, on account of the note, one of which was by check signed, "The Acme Candy Co." Later

in his testimony the plaintiff explained that what was meant by his " interest in the firm" was what he had paid in, and that it was stated in the conversation above recited that the note should be for that amount. If the evidence rested here, it might well be questioned, whether, even assuming its entire truth, it was sufficient to warrant a jury in finding that the appellant assented to the giving of a judgment note with waivers. But the plaintiff testified further, that after the note fell due, he went to the appellant and demanded payment of the note. "I held against them;" that the appellant replied, "There is some more notes out," and then asked how much the note was; that he told him what the face of the note was, and how much had been paid on it; also that he showed the appellant the note. When asked by the court whether appellant had the note in his hand, the plaintiff answered, "No, he didn't have it in his hand. I had it in my hand, but held it so he could see it." The most significant part of his testimony is in a small compass and we quote it in full: " He replied again, ' There is some more notes out.' Then I said, ' Did you not agree and consent that Mr. Diehl shall give me this note for my interest in the Acme Candy Company ? ' He replied that was the understanding. Says I, ' My note is overdue, and I want the money for it.' Mr. Sprenkle replied ' I will not say any more ; you have witness along.' Then I left." The plaintiff's testimony as to this last conversation was corroborated to some extent by that of N. E. Klein and was contradicted by that of the appellant. His testimony as to the first conversation is in direct conflict with that of the appellant and of Diehl. But as it is not within our province to pass upon the credibility of the witnesses and to find the facts, we need not further allude to the testimony introduced by the appellant. Assuming the truth of the plaintiff's testimony the jury were warranted in finding that there was a precedent agreement on the part of the appellant that a note for the amount he had paid into the firm should be given to the plaintiff in consideration of his withdrawal, and a subsequent admission that the very note which was exhibited to him was the one he had agreed that Diehl might give. The question of the appellant's assent was one of fact. In determining it the testimony as to what occurred before the giving of the note and as to what occurred afterwards is to be read as a con-

nected whole. Thus viewing it the jury were warranted in finding, if they believed the plaintiff, that the appellant knew the nature of the note, and its amount and assented to it in the form in which it stood. The court was clearly right in submitting the question to the jury, and we find no substantial error in the manner of its submission. The instructions contained in the general charge and the answers to the points relating to this question seem to be in substantial accord with the rulings in Miller v. Glass Works, supra, therefore, the assignments of error relating thereto are overruled. The other assignments of error do not seem to us to require particular discussion. We find no error in any of the rulings which requires a reversal. The controlling question in the case was one of fact and it was submitted to the jury in an adequate and impartial charge.

All the assignments of error are overruled and the judgment is affirmed.